United States District Court
Southern District of Texas
FILED

JAN 2 8 2004

Michael N. Milby
Clerk of Court

IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| EFRAIN GARCIA MONTALVO<br>Petitioner,<br><br>v.<br><br>A.G. WINFREY, INTERIM FIELD OFFICE DIRECTOR,<br>BUREAU OF IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, and<br>JOHN ASHCROFT,<br>UNITED STATES ATTORNEY GENERAL,<br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. **B-04-007** |

## PETITION FOR WRIT OF HABEAS CORPUS
## AND BRIEF IN SUPPORT THEREOF

Efraín García Montalvo files the instant Petition for Writ of Habeas Corpus and Injunctive and Declaratory judgments. Petitioner seeks relief from a final order of removal, entered on October 4, 2002. The plaintiff seeks various forms of declaratory and corresponding injunctive relief, as more fully discussed below.

### I. JURISDICTION

1.    Petitioner asserts habeas jurisdiction under Title 28, United States Code, ("28 U.S.C."), §2241, to review the order of removal entered against him on October 4, 2002. The petitioner is not presently detained in the custody of the Department of Homeland Security. Respondent Winfrey has administrative control over petitioner's case. Respondent Winfrey may execute the order of removal at any time. Respondents Winfrey and Ashcroft therefore are the appropriate custodians of petitioner for habeas purposes.

1

## II. THE PARTIES

2.      The petitioner is a native and citizen of Mexico who became a Lawful Permanent Resident, ("LPR"), of the United States on October 5, 1978. He has resided continuously in the United States since that date.  He is the subject of an administratively final order of removal entered on October 4, 2002. [December 18, 2003]

3.      Respondent Winfrey is the Interim Field Office Director of the San Antonio, Texas, office of the Bureau of Immigration and Customs Enforcement, ("B.I.C.E."). Respondent Ashcroft is the United States Attorney General.

## III. FACTS

4.      The petitioner is a 39 year-old native and citizen of Mexico.  He is the father of Efrain García, Jr. age six years, and Mayra García, age three years, both of whom are United States citizens.

5.      On October 6, 1998, in Kleberg County, Texas, Mr. Garcia was convicted of possession of marijuana and placed on Community Supervision for ten years.

### Removal proceeding before the United States Immigration Judge

6.      Removal proceedings began upon issuance of a Notice to Appear, ("NTA"), by the Immigration and Naturalization Service, ("INS"), on November 20, 1998.[1] The INS alleges that the respondent is a native and citizen of Mexico and an LPR of the United States who is removable pursuant to 8 U.S.C. §1227(a)(2)(B)(i) in that he has been convicted of an offense relating to a controlled substance, and further, that he has been convicted of an aggravated felony within the meaning of 8 U.S.C. §1101(a)(43)(B). The

---

[1] The INS merged into the newly organized Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, effective March 1st 2003.

petitioner moved to terminate proceedings, arguing that he was not removable based upon his plea of guilty. In support of his position, he reasoned that one who has not been previously afforded any rehabilitative treatment and whose conviction is for possession of marijuana falls within 18 U.S.C. §3607, the Federal First Offender Act, ("FFOA"). Federal law does not consider a finding of guilt for a first offense of simple possession of a controlled substance to constitute a conviction. The petitioner further emphasized whether or not the finding of guilt by a state court judge is withheld and subsequently set aside, 18 USC §3607 remains unchanged. Therefore, the petitioner submitted, he has not been convicted of an aggravated felony. The effect of 18 USC §3607 is not nullified by INA §101(a)(48)(A). Congress still intends to view a first offense of simple possession of a controlled substance for which a defendant has pleaded or been found guilty and adjudication or entry of judgment deferred as not having been convicted "for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, *or for any other purpose."* 18 USC §3607(b), (emphasis added).

7.      The United States Immigration Judge, (IJ") in Harlingen Texas, granted Mr. García's motion and terminated proceedings on May 25, 1999. The INS appealed.

8.      On April 4, 2002 the Board of Immigration Appeals, ("BIA"), reopened and remanded removal proceedings to the IJ. The BIA's order reopening proceedings was based on it's decisions in *Matter of Roldan,* 22 I&N Dec. 512 (BIA 1999), and *In re Salazar Regino,* 23 I&N Dec. 223, (BIA 2002). In *Salazar Regino,* the BIA found a deferred adjudication for simple possession of a controlled substance is a conviction for an aggravated felony, rendering a non-citizen ineligible for relief from removal, if the

non-citizen's case arises within the 5th Circuit. The rationale supporting *Salazar Regino, supra,* is derived from the application of *dicta* from the 5th Circuit's decision in *U.S.A. v. Hernández Avalos,* 251 F.3d 505, 506, (5th Cir. 2001), a case which analyzed the United States Sentencing Guidelines, and found that a single conviction for an offense relating to a controlled substance is an aggravated felony.

9.      On October 4, 2002, the IJ found Mr. García had suffered a conviction for which he was removable, relying on the BIA decision in *Matter of Roldan, supra.* Further, the IJ found Mr. García ineligible for any relief from removal as a result of the BIA decisions in *In re Salazar Regino,* 23 I&N Dec. 223 (BIA 2002) and *In re Yanez García,* 23 I&N Dec. 390, (BIA 2002).


### Appeal to the Board of Immigration Appeals

10.      Petitioner's appeal to the Board of Immigration Appeals, ("BIA"), acknowledged the new definition of "conviction," as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRAIRA"), and found at 8 U.S.C. §1101(a)(48), which states that any finding of guilt by any court is sufficient for purposes of immigration laws. The petitioner renewed the constitutionally based arguments upon which the IJ commented, and reminded the BIA that when a non-citizen reasonably relies on the state of the law and pleads guilty, the possibility for relief in any future immigration proceeding is certainly an important factor in reaching such a decision. In sum, fair notice of the conduct which subjects one to punishment, and the severity of the consequences as a result of a finding of guilt are required under the due process clause of

the 5th amendment to the United States Constitution. *BMW of North America, Inc., v Gore,* 517 U.S. 559, 574 (1996).

11.    The petitioner's appeal pointed out that the BIA decision in *Salazar Regino* results in a gross inequity: First, notwithstanding placement on probation, the LPR becomes  removable as a result, despite any subsequent action dismissing the cause. Second, the BIA's choice to apply *dicta* from the 5th Circuit's decision in *Hernández Avalos, supra,* forecloses any relief. This combination of effects, counting a period of community supervision as a conviction, and then counting the conviction as an aggravated felony which renders the petitioner unable to apply for discretionary relief places any non-citizen who has been arrested for a controlled substance offense in the 5th Circuit in an unfairly precarious position. Mr. García exhorted the BIA that the consequences imposed upon him and others similarly situated is fundamentally unfair in it's effect. When Mr. García complied with the conditions of probation, he had the reasonable expectation that no negative consequences would flow as a result of the criminal charge. He had no notice that relief would be foreclosed, and the severity of the consequences in immigration proceedings far outstrip the criminal sanction he received. Even though a removal proceeding is civil in nature, the result is fundamentally unfair and violative of due process.   Nevertheless, the BIA declined to respond to the constitutional arguments and affirmed the IJ's decision on December 18, 2003.


## IV. CAUSES OF ACTION IN HABEAS CORPUS

**a.    VIOLATION OF DUE PROCESS**

12.     This Court has jurisdiction under 28 U.S.C. §2241 to review orders of removal, even though the petitioner did not seek to reopen the BIA's affirmance of the IJ's decision or file a petition for review at the Fifth Circuit. In *McCarthy v. Madigan*, 503 U.S. 140 (Supreme Court 1992), the United States Supreme Court commented upon the requirement that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. 503 U.S. 140, 144-45. "Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." The exhaustion principle acknowledges that the administrative agency charged by Congress retains primary responsibility for the adjudication of those programs. "Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." 503 U.S. 140, 145.

13.     Nonetheless, an exception to the exhaustion prerequisite may exist when the challenge is to the adequacy of the agency procedure itself, such that "the question of the adequacy of the administrative remedy . . . [is] for all practical purposes identical with the merits of [the plaintiff's] lawsuit." 503 U.S. 140, 148, *citing Barry v. Barchi*, 443 U.S. 55, 63, n.10, (1979) (*quoting Gibson v. Berryhill*, 411 U.S. 564, 575. Moreover, if there is uncertainty as to the authority of a particular agency to grant the relief requested, by-passing an administrative remedy does not violate the exhaustion requirement. Additionally, the Court found that where the agency has already decided the particular issues for reconsideration, the requirement of administrative review would result in futility. 503 U.S. 140, 148.

6

14.        Here, the IJ and the BIA described the petitioner's arguments as "constitutional" in nature. While the BIA may entertain due process and fundamental fairness challenges to procedures as applied, it is established BIA doctrine that the Board will not rule on the constitutionality of the statute which it administers. *Matter of U-M-,* 20 I&N Dec. 327 (BIA 1991), [BIA will not rule whether deportation is double jeopardy]. *But see Matter of Toro,* 17 I&N Dec. 340, (BIA 1980).    Further, the IJ cited the BIA decision in *Salazar Regino, supra,* for the proposition that the law is firmly settled in this area, at least from the BIA's perspective. Therefore, the agency had already ruled on the issues presented on appeal.

15.        The BIA has expressed doubt as to the scope of it's authority to rule on questions of constitutional import. In like manner, agency decisions directly address the questions presented.  The BIA's order upholding the decision of the IJ mentions both of those principals. When all of those factors are considered together, the petitioner did not frustrate the doctrine of exhaustion in filing the instant Petition for Writ of Habeas Corpus instead of first seeking further review by the agency.

16.        It is established law in the Fifth Circuit that the "jurisdiction stripping provisions," found at 8 U.S.C. §1252(a)(2), preclude a petition for review of a final order of removal arising from a criminal offense covered by 8 U.S.C. §1227(a)(2)(B)(i). While the Fifth Circuit has jurisdiction to determine its' own jurisdiction, once the court determines that the order of removal is based on a controlled substance offense,( 8 U.S.C. §1227(a)(2)(B)(i), "the jurisdiction stripping provisions of §1252 clearly apply." *Flores Garza v. INS,* 328 F.3d 797, (5th Cir. 2003). Because the order of removal in this matter was based on the identical provision of law, the Fifth Circuit would have dismissed any

petition for review due to lack of jurisdiction. Therefore, the petitioner did not frustrate the doctrine of exhaustion in filing the instant Petition for Writ of Habeas Corpus instead of first filing a petition for review at the Fifth Circuit.

17.     The removal order against petitioner violates principles of equal protection. In *Salazar Regino, supra,* the BIA found that a non-citizen who has been granted deferred adjudication for simple possession of a controlled substance and whose case arises within the 5th Circuit has been convicted of an aggravated felony and is ineligible for relief from removal. In the 2nd, 3rd, 4th, 6th, and 7th circuits, a similarly situated non-citizen may eligible for discretionary relief. *In re Yañez Garcia, .*" 23 I&N Dec. 390, (BIA 2002). While an identically situated non-citizen in another jurisdiction may not even be removable, still others may file an application for relief and present evidence of equities and value to the local community and the United States.

18.     A non-citizen who has been an LPR for one year and pleads guilty to possession of a controlled substance will not be found to be removable, if he resides within the jurisdiction of the 9th Circuit, pursuant to the decision of the BIA in *Matter of Salazar Regino, supra.* If he resides in the 3rd Circuit, he would be found removable yet eligible for discretionary relief. *See Gerbier v. Holmes,* 280 F. 3d. 297 (3rd Cir. 2002). Possession of more than 60 grams of marijuana in Montana is a felony. *See* Montana Code Annotated § 45-9-102. Simple possession of any amount of marijuana is a misdemeanor in California. *See* California Penal Code §1000. In *USA v. Arellano Torres, supra,* the 9th Circuit reviewed whether the petitioner's prior conviction for possessing a controlled substance qualified as an aggravated felony for purposes of the U.S.S.G.

> Possession of a controlled substance, however, may satisfy the second prong of the aggravated felony definition if it is "punishable by more than one year's

8

imprisonment under applicable *state* . . . law." *Id.* (emphasis added); *see also United States v. Ibarra-Galindo*, 206 F.3d 1337, 1339-40 (9th Cir. 2000) (holding that crime that constitutes misdemeanor under federal law may nonetheless be considered aggravated felony if it qualifies as felony under state law), *cert. denied*, 531 U.S. 1102 (2001), *overruled in part by Corona-Sanchez*, 291 F.3d at 1210. That is the case here: under Nevada law, possession of a controlled substance is a category E felony, NRS 453.336(2), which Nevada defines as "a felony for which a court shall sentence a convicted person to imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 4 years." NRS 193.130.₈

*Arellano Torres, supra* at 1177.

19.    According to the ruling of the BIA in *Salazar Regino, supra,* and *Yañez García, supra,* a non-citizen who has a sole conviction for simple possession of a controlled substance is an aggravated felon if federal law of the relevant jurisdiction so declares. An LPR convicted of felony possession of marijuana in Montana is an aggravated felon, according to the ruling of the 9th Circuit in *Arellano Torres, supra.* However, given the previous ruling of the 9th Circuit in *Lujan Armendariz v. INS and Roldan Santoyo v. INS,* 222 F. 3d 728 (9th Cir. 2000) the same would not even be removable because he or she may rely on the ameliorative provisions at 18 USC §3607 to avoid a finding of removability. This anamolous and unpredictable outcome is the progeny of the policy presently employed by the BIA in construing the definition of aggravated felony through the lens of federal circuit court rulings in cases involving the USSG.

20.    The BIA stated, in *Yanez García,* "[I]n immigration cases arising within circuits that have not yet had occasion to consider this question, we will apply the standards adopted by the majority of the circuit courts." 23 I&N Dec. 390, 391. Neither the 4th Circuit nor the 6th Circuit have decided whether a state offense which is a felony may be also be an aggravated felony drug trafficking crime for purposes of relief in removal

9

proceedings, and the BIA will adopt the standard applied by the majority of the courts which have spoken to the question. In North Carolina, possession of more than 1.5 ounces of marijuana is a felony. In Maryland, simple possession of any amount of marijuana is a misdemeanor. *See* Maryland Code Annotated, Crimes and Punishments, §287. Maryland and North Carolina are both located in the Fourth Circuit, and the Fourth Circuit has yet to rule on this question. However, were the BIA called upon to decide whether an LPR convicted of possessing 2 ounces of marijuana in North Carolina has been convicted of an aggravated felony, the Board would find that LPR ineligible for any relief from removal, given its' rulings in *Salazar Regino, supra*, and *Yanez García, supra*. However, a similarly situated LPR who resides in Maryland could have been convicted of possessing 4 ounces of marijuana , (a misdemeanor under Maryland law) and be permitted to apply for cancellation of removal.   *See In re Santos López, supra*, and *In re Elgendi, supra.*

21.     It violates principles of equal protection, and therefore due process where the BIA abandoned the provisions of federal law which would not find an LPR removable, and further found in *Salazar Regino*, *supra*, that in the Fifth Circuit a single offense for simple possession of a controlled substance, is a drug trafficking crime for which there is no relief from removal.


## V. SECOND CAUSE OF ACTION-

## INJUNCTIVE AND DECLARATORY JUDGMENT

22.          Executing a removal order can have serious, and in some cases, permanent consequences. Even where the person was not deportable as charged, and deportation

results in a miscarriage of justice, it can make it difficult, if not impossible, to set aside

the deportation order. *See Lara v. Trominski,* 216 F.3d 487, 494, n.8 (5th Cir. 2000) (Must

show that there is a freestanding due process right to be free of 'gross miscarriage of

justice' during the immigration process.").

**The retroactive characterization of petitioner's offense as a conviction for an
aggravated felony violates Due Process as declared in a series of Supreme Court
cases involving "fair notice."**

23.    Although not punishment for a criminal offense, deportation has long been

recognized as a "penalty." *See Reno v. American-Arab Anti-Discrimination Committee,*

525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result.

Deportation would then become an additional penalty, retroactively attached to the

"criminal offense." This, it is submitted, would be a "manifest injustice," and would

violate Due Process. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 716

(1974) (retroactive application of a law violates Due Process if it creates a "manifest

injustice), and *B.M.W. of North America v. Gore,* 517 U.S. 559, 574 (1996).

("Elementary notions of fairness enshrined in this Court's constitutional jurisprudence

dictate that a person receive fair notice not only of the conduct that will subject him to

punishment but also of the severity of the penalty…").

24.    §42.01 of the Texas Code of Criminal Procedure, ("TCCP"), is entitled

"Judgment", and states, in relevant part,

"A judgment is the written declaration of the court signed by the trial judge and entered

of record showing the conviction or acquittal of the defendant. The sentence served shall

be based on the information contained in the judgment…" TCCP Art. 42.02 is entitled,

"Sentence", and states:  "The sentence is that part of the judgment, or order revoking a

suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law."

25.     8 U.S.C. §1101(a)(48) defines "conviction", with respect to an alien, as

"a formal judgment of guilt of the alien entered by a court or, *if adjudication of guilt has been withheld*, where a judge or jury has found the alien guilty or (1) *the alien has entered a plea of guilty* or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, *AND* (2) *the judge has ordered some form of punishment*, penalty, or restraint on the alien's liberty to be imposed." (emphases added).

26.     The definition of "conviction" at 8 U.S.C. §1101(a)(48) requires a finding of guilt and some form of sentence or punishment. The petitioner respectfully urges this Court that he has not been convicted because he has never been sentenced, according to Texas law. Therefore he has not suffered a conviction within the meaning of INA 8 U.S.C. §1101(a)(48). Despite the holding by the Fifth Circuit in *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), the facts herein presented are distinguishable from those on which the *Moosa* Court based it's ruling.

27.     Moosa was given deferred adjudication for Indecency with a Child, and argued that he had not been convicted within the meaning of the INA. The Fifth Circuit examined the statutory language of at 8 U.S.C. §1101(a)(48) and noted the two prong analysis for a conviction, *Moosa v. INS*, 171 F.3d 994, 999-1000. The Court noted that the applicant served time in jail on work release, had to report to a probation officer every month, and was required to attend counseling, *Moosa v. INS, supra,* at 1004. "This was a punishment," The Fifth Circuit concluded, "and a restraint on his liberty." *Ibid.*

28.    While the petitioner was ordered to pay court costs, a fine, and a fee, the judge never imposed a sentence. When the petitioner has complied with the conditions, the matter will be dismissed with no sentence as a result of any finding under the statute. The BIA identifies a conviction as an admission, determination, or entry of guilt linked with punishment, *Matter of Roldan, supra.* The petitioner entered a plea of guilty and the court accepted his admission, but unless the court finds that the defendant has committed another offense, no sentence results. The probationary period imposed satisfied the first prong of the BIA analysis in *Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988). However, all of the elements necessary for a conviction as defined at 8 U.S.C. §1101(a)(48) are not satisfied as to petitioner because no sentence was imposed as a result of that admission. The BIA envisions a nexus between finding or admission or guilt and any court ordered sanction, as did the Fifth Circuit in *Moosa.*

29.    As the BIA noted in *Matter of Roldan, supra,* "Until Congress enacted §322 of IIRAIRA, the definition of "conviction" for immigration purposes had been a fluid one." 22 I&N Dec. 512 (BIA 1999) at 516. In *Matter of Ozkok,* 19 I&N Dec. 546, (BIA 1988), the BIA adopted a three-part definition of conviction:

> (1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or he has admitted sufficient facts to warrant a finding of guilty;
> (2) the judge has entered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, revocation or suspension of a driver's license, deprivation or nonessential activities or privileges, or community service); and
> (3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence on the original charge.

*Matter of Ozkok, supra,* at 551-52.

Case 1:04-cv-00007    Document 1    Filed in TXSD on 01/28/2004    Page 14 of 24

30.    In *Martínez Montoya v. INS,* 904 F.2d 1018, (5th Cir. 1990), the Fifth Circuit found that a deferred adjudication in Texas does not comport with the BIA's requirements for a conviction as outlined in *Matter of Ozkok, supra.* "Under the *Ozkok* test, in order to consider *Martínez Montoya* convicted for immigration purposes, further proceedings on the issue of his guilt must not be available before a judgment can be entered. Because further proceedings are available under the Texas deferred adjudication procedure, this requirement is not satisfied." 904 *F.2d 1018, 1026.*

However, in *Moosa v. INS,* 171 F.3d 994, 1004, (5th Cir. 1999), the Fifth Circuit declared "…(A) Texas deferred adjudication…is a "conviction"….Moosa's deferred adjudication meets each prong of the new definition of "conviction."

31.    *Martínez Montoya* was controlling precedent in the Fifth Circuit after the plea was taken. The BIA's ruling in *Roldan, supra,* on which the IJ relied in finding petitioner beyond the protections available at 8 U.S.C. §1229b(a), finds retroactive application permissible, even though it's application attaches new legal consequences to events completed before its enactment.

**The language of the United States Supreme Court in *INS v. St. Cyr, supra,* emphasizes that the legal consequences of any action should be evaluated under the law as it existed on the date of it's commission.**

32.    The BIA should have viewed the petitioner's guilty plea under the law as it existed when it occurred. Even though Congress was specific as to the retroactive effect of 8 U.S.C. §§1101(a)(48) and 1227(a)(3)(A)(iii), the second prong of the retroactivity analysis employed in *INS v. St. Cyr, supra,* asks whether applying those definitions produces an impermissible retroactive effect for aliens who, like petitioner, entered a plea at a time when the plea would not have rendered them removable.

33.    Applications of 8 U. S. C. §§101(a)(48) and 1227(a)(2)(A)(iii) and the elimination of any possibility of relief for people who entered into plea agreements with the expectation that they would be eligible for such relief, if relief ever became necessary, clearly creates liability for events that have already run their course. In this case, the petitioner would not have even needed any relief because he would not have been considered convicted under the state of the immigration laws on the date he entered his plea. As an LPR, he would neither be deportable or removable. Moreover, by operation of Texas law, placement on community supervision establishs that the term "conviction" cannot be fairly applied to him, because no sentence was ever imposed.

**The petitioner's equal protection and fair notice arguments should be viewed in light of the Supreme Court doctrine of Substantive Due Process.**

34.    The Due Process Clause of the Fifth Amendment prohibits the interference or impairment of a fundamental right unless the law accomplishes a compelling state interest. Further, the relation between the objective of the law and the method employed to accomplish the state's aim must be necessary, and narrowly tailored to meet that end. If the government may achieve its' goal in a less burdensome way, then a law restricting a fundamental right violates Due Process. *See Moore v. East Cleveland* 431 U.S. 494 (1977).

35.    Choices and decisions concerning marriage, procreation, and raising ones' family implicate fundamental rights. The United States Supreme Court has applied strict scrutiny to laws impinging upon fundamental rights. *See Meyer v. Nebraska* 262 U.S. 390 (1923), *Pierce v. Society of Sisters,* 268 U.S. 510 (1925); *Skinner v. Oklahoma,* 316 U.S. 535

(1942); *Griswold v. Connecticut,* 381 U.S. 479 (1965); *Roe v. Wade,* 410 U.S. 113 (1973).

36.     The law must be drafted to ensure that the government can achieve its' goal in the way that is the least exacting and troublesome to those whose fundamental rights are being restricted by its' enforcement. In *Pierce v. Society of Sisters, supra,* the Supreme Court voided a statute which it held:

> [U]nreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control. As often heretofore pointed out, rights guaranteed by the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state.

268 U.S. 510, 534-535

37.     Personal autonomy, including the ability to rear one's child and cohabit with one's nuclear family is protected by the Due Process Clause. In *Moore v. East Cleveland, supra*, the United States Supreme Court held that a housing law which separated families was unconstitutional, and noted: "The Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most cherished values, moral and cultural." 431 U.S. 494, 504. They are not specifically enumerated in the Bill of Rights, yet respect for the liberty of the individual and the sanctity of the family are among the traditional values upon which our nation was founded and thrived. They are recognized by the Supreme Court within the doctrine of Substantive Due Process.

Due process has not been reduced to any formula; its content cannot be determined by reference to any code. The best that can be said is that through the course of this Court's decisions it has represented the balance which our Nation, built upon postulates of respect for the liberty of the individual, has struck between that liberty and the demands of organized society. If the supplying of content to this Constitutional concept has of necessity been a rational process, it certainly has not been one where judges have felt free to roam where unguided speculation might take them. The balance of which I speak is the balance struck by this country, having regard to what history teaches are the traditions from which it developed as well as the traditions from which it broke. That tradition is a living thing. A decision of this Court which radically departs from it could not long survive, while a decision which builds on what has survived is likely to be sound. No formula could serve as a substitute, in this area, for judgment and restraint.

". . . [T]he full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution. This `liberty' is not a series of isolated points pricked out in terms of the taking of property; the freedom of speech, press, and religion; the right to keep and bear arms; the freedom from unreasonable searches and seizures; and so on. It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints, . . . and which also recognizes, what a reasonable and sensitive judgment must, that certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.

431 U.S. 494, 501-02, (internal citations omitted).

38.    The petitioner urges this Court that the cumulative effect of counting a period of community supervision as a conviction, and then finding that simple possession of a controlled substance is a drug trafficking crime, violates his right to substantive due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. While the United States Congress has plenary power over immigrants, laws which impair a fundamental right, such as the right to raise one's family and cohabit with one's nuclear family, must be accomplished by means narrowly tailored to meet that end. Immigration laws provide that a former LPR who is deported from the United States after having been convicted of an aggravated felony is subject to lifetime banishment from the United States. *See 8 U.S.C. §1182(h)(2).* The purpose of immigration laws are to provide

mechanisms by which non-citizens can adapt and flourish in the United States, while protecting the population from any dangerous elements among all the new arrivals. The INA as currently construed by the BIA provides no opportunity for a hearing or consideration of substantial equities. The means employed are not the least exacting and troublesome to those thereby affected. Because the goal of minimizing criminal activities by immigrants may be accomplished in a manner less disruptive to LPR's who have United States citizen family members, counting a deferred adjudication as a conviction, and then finding that simple possession of a controlled substance is a drug trafficking crime, violates substantive due process.

39.    Although its' opinion upheld the right of extended families to cohabit, and struck down a zoning law which impaired that right, the United States Supreme Court could have been discussing immigrant families when it stated:

> Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition. 14 Over the years millions of our citizens have grown up in just such an environment, and most, surely, have profited from it. Even if conditions of modern society have brought about a decline in extended family households, they have not erased the accumulated wisdom of civilization, gained over the centuries and honored throughout our history, that supports a larger conception of the family. Out of choice, necessity, or a sense of family responsibility, it has been common for close relatives to draw together and participate in the duties and the satisfactions of a common home. Decisions concerning child rearing, which Yoder, Meyer, Pierce and other cases have recognized as entitled to constitutional protection, long have been shared with grandparents or other relatives who occupy the same household - indeed who may take on major responsibility for the rearing of the children.

431 U.S. 494, 504-05.

40.    In a recent decision the United States Supreme Court held 8 U.S.C. §1226(c)

compelling mandatory detention for LPR's convicted of an aggravated felony pending

removal proceedings constitutional, and noted:

> It has been settled for over a century that all aliens within our territory are
> "persons" entitled to the protection of the Due Process Clause. Aliens "residing in
> the United States for a shorter or longer time, are entitled, so long as they are
> permitted by the government of the United States to remain in the country, to the
> safeguards of the Constitution, and to the protection of the laws, in regard to their
> rights of person and of property, and to their civil and criminal responsibility."
> *Fong Yue Ting* v. *United States, 149 U.S. 698, 724*, (1893). *The Japanese*
> *Immigrant Case, 189 U.S. 86, 100-101,* (1903), settled any lingering doubt that the
> Fifth Amendment's Due Process Clause gives aliens a right to challenge
> mistreatment of their person or property.

*Demore v. Kim*, No. 01-1491, (U.S. Sup. Ct. April 29, 2003) at 15.


41.    While *Demore v. Kim* found that an LPR may be detained without an

individualized bond hearing before an IJ, it also re-emphasized that LPR's should be

afforded constitutional protection. Due to the decision of the Fifth Circuit's decision in

*United States v. Hernández Avalos*, 251 F.3d 505, 506, (5th Cir. 2001), and the BIA's

disinclination to distinguish a finding of aggravated felony for purposes of interpreting

the United States Sentencing Guidelines from its' application in removal proceedings, the

application of the BIA's ruling in *Salazar Regino*, as applied to Mr. García, violates long

standing tenets of equal protection and due process.   The Supreme Court noted, in

*Demore v. Kim,*

> once an alien lawfully enters and resides in this country he becomes invested with
> the rights guaranteed by the Constitution to all people within our borders. Such
> rights include those protected by the First and the Fifth Amendments and by the
> due process clause of the Fourteenth Amendment. None of these provisions
> acknowledges any distinction between citizens and resident aliens. They extend
> their inalienable privileges to all "persons" and guard against any encroachment on

19

those rights by federal or state authority.' " 344 U.S. at 596-597, n. 5 (quoting *Bridges*, *supra*, at 161). See also *United States* v. *Verdugo-Urquidez,* 494 U.S. 259, 271, (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country");

*Demore v. Kim* at 16.

42.    Mr. García became a LPR in 1978. He had accumulated more than twenty years of lawful permanent residence prior to the commission of the offense for which he was granted probation in 1998.  Had Mr. García been heard on the merits of his application for relief prior to the BIA's ruling in *Salazar Regino*, *supra*, his long U.S. residence, his immediate and extended family, his solid employment history, and any evidence of rehabilitation would be factors for consideration in an application for discretionary relief pursuant to INA §240A(a). *See: In re C-V-T-* 22 I & N Dec. 7,  (BIA 1998).

43.    The effect of the BIA's rulings in *Salazar Regino, supra* places relief available under federal law in other jurisdictions beyond the reach of Mr. García, resulting in fundamental unfairness.  When the United States Supreme Court disagreed with the Attorney General's interpretation of the retroactive provisions of the Anti Terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), and IIRAIRA in *INS v. St Cyr,* 121 S. Ct. 2271 (2001), the Court applied the doctrine of fundamental fairness to allow LPR's who pled guilty in reliance on the availability of a waiver to ameliorate the immigration consequences of those convictions and apply for 212(c) relief. Here, fundamental fairness and revered notions of substantive due process, very recently re-emphasized by the United States Supreme Court in *Demore v. Kim, supra,* require that 18 USC §3607, and all other protections available under federal law to long time LPR's, be equally accessible to Mr. García.

20

44.    The BIA's reluctance to follow the precepts of *Roldan Santoyo and Lujan Armendariz v. INS,* 222 F.3d 728, (9th Cir. 2000), finding a deferred adjudication is not a conviction for purposes of federal law due to 18 USC §3607, and then follow the ruling of the Fifth Circuit in *United States v. Hernández Avalos, supra,* spawns another constitutional dilemma. The denial of equal protection is compounded by the denial of substantive due process. The BIA abandoned the provisions of federal law which would not find an LPR removable, and further found in *Salazar Regino, supra,* that in the Fifth Circuit a single offense for simple possession of a controlled substance, is a drug trafficking crime for which there is no relief from removal. There is a penetrating disparity in results created by this combination of effects. While an identically situated non-citizen in another jurisdiction may not even be removable, still others may file an application for relief and present evidence of equities and value to the local community and the United States. Yet due to the BIA's ruling in *Salazar Regino, supra,* an LPR in the jurisdiction of the Fifth Circuit with over two decades of lawful residence and similar or even more weighty equities, is not even permitted to seek relief. Had Mr. García not resided lawfully resided in the United States for so many years, his claim to a denial of substantive due process would admittedly be lessened. If Mr. García was permitted to apply for relief and his application was denied as a matter of discretion after consideration upon all the merits he may present, his claim to a denial of substantive due process would evaporate.

45.    However, in light of the apparent disparity in outcomes which gives rise to his valid claim to a denial of equal protection, because Mr. García has lived in the United States for many years and everything he knows and loves is in this country, to deny him a

hearing before an IJ is contrary to the notions of substantive due process explicated in *Moore v. East Cleveland, supra* and *Demore v. Kim, supra.*

46.    While the goal of deterring drug abuse by non-citizens is a legitimate governmental function, denying an administrative immigration hearing to an identified drug abuser is not the least restrictive means of accomplishing those ends. Because the denial of an opportunity to seek relief may result in lifetime banishment from the United States, in effect, the application of the BIA's decision in *Salazar Regino, supra,* thereby results in enormous hardship to citizens of the United States who are family members of those effected LPR's. Cherished judicial doctrine promulgated by the United States Supreme Court must overrule an administrative agency's interpretation of dicta in the Fifth Circuit's decision, because the agency's ruling engenders a violation of equal protection. That denial of equal protection, especially when considered in light of Mr. García's lengthy residence and ties to the United States, amounts to a denial of substantive due process.

47.    Here, the IJ found that Mr. García is ineligible for cancellation of removal due to changes in the law subsequent to the date he entered a guilty plea.  However, when proceedings were initiated, Mr. García was not even removable as a result of his guilty plea. Even though proceedings to take away his LPR status had been initiated, relief was not even necessary, because Mr. García was not rendered removable under the state of the law on the date he entered his plea.  Three years after proceedings were terminated, and four years after the initiation of proceedings, Mr. García was not only subject to removability, but rendered removable without relief and any possibility of ever returning to the United States.  Therefore, considerations of fair notice, reasonable reliance, and

settled expectations mandate that cancellation relief should not be eliminated for LPR's who filed an application for cancellation prior the decision in *Salazar Regino, supra.*

48.    A functional, commonsense judgment is required in order to ascertain whether a statute creates an impermissible retroactive effect. *Martin v. Haddiz,* 527 U.S. 343 (1999). Retroactive application of the rulings of this Board in *Roldan, supra,* and *Salazar Regino, supra,* as applied to Mr. García, increases his liability for past conduct and erases any settled expectations he may have had concerning his immigration status on the date he entered a plea of guilty. The fundamental fairness analysis upon which *St. Cyr* is based is applicable to Mr. García, because reliance on the immigration laws was part of the calculus in deciding whether or not to enter a plea.


WHEREFORE, it is urged that the Court grant the following relief:

1.    That the Writ of Habeas Corpus issue, and

2.    The removal order be vacated, and the petitioner's case be remanded to the BIA for further proceedings consistent with the principles articulated herein;

3.    That respondents Winfrey and Ashcroft be enjoined from executing the order of removal or changing Mr. García's custody status; and

4.    That the Court award such other and further relief as the Court deems just and appropriate under all of the circumstances.

Respectfully submitted,


Jodilyn M. Goodwin, Esq.
1522 East Tyler
Harlingen, Texas, 78550

23

956-428-7212
956-428-7360(FAX)
Federal Id: 20102
Texas State Bar: 00793835

## VERIFICATION

I, Jodilyn M. Goodwin, certify that I am familiar with the facts as stated above, and that they are true and correct to the best of my knowledge and belief.

_____
Jodilyn M. Goodwin, Esq.

### Certificate of Conference

I, Jodilyn M. Goodwin, certify that on January 13th, 2004, I conferenced with SAUSA Lisa Putnam and advised her of the filing of this writ on this day.

_____
Jodilyn M. Goodwin, Esq.

## CERTFICATE OF SERVICE

I, Jodilyn M. Goodwin, certify that today, January 14th 2004, a copy of the petition for writ of habeas corpus, was served upon SAUSA Lisa Putnam, by hand delivery to 1717 Zoy Street, Harlingen, Texas, 78551.

_____
Jodilyn M. Goodwin, Esq.

24